LEE C. AND BARBARA KINGAN BOYD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20302–91.     Filed November 1, 1993.

Lee C. Boyd and Barbara Kingan Boyd, pro sese.
*Carmino Santaniello,* for respondent.

COLVIN, *Judge*: Respondent determined a $21,268 deficiency in petitioners' Federal income tax for 1983 and increased interest for substantial underpayment due to tax-motivated transactions.

After concessions, the issues for decision are;

1. Whether the period for assessment of tax for partnership items provided in section 6229 applies to items which arose in years for which assessment of tax is otherwise barred by section 6501(a). We hold that it does;

2. whether the notice of deficiency is barred by res judicata or as a second notice for the same year under section 6212(c). We hold that it is not;

3. whether petitioners may deduct a $120,000 partnership loss for Regal Laboratories, Ltd. We hold that they may not;

4. whether petitioners are liable for increased interest for substantial underpayment due to tax-motivated transactions under section 6621(c). We hold that they are.

References to petitioner in the singular are to Lee C. Boyd. Section references are to the Internal Revenue Code in effect in 1983. Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

### 1. *Petitioners*

Petitioners are husband and wife who resided in Wilton, Connecticut, when they filed their petition.

### 2. *Regal Laboratories, Ltd.*

Regal Laboratories, Ltd. (Regal), was a limited partnership formed in Nevada to commercially exploit various agricultural biotechnologies, including a product known as Agrosoke. Four promoters began selling Regal limited partnership units in May 1983. Shirley Bailey, M.D. (Dr. Bailey), was Regal's general partner in 1983 and 1984. Each limited partnership unit cost $10,000, consisting of $2,000 in cash and an $8,000 promissory note. The partnership promised investors a deduction equal to five times their cash investment in the first year. Petitioners' cash investment in Regal was $24,000 in 1983.

A Federal grand jury investigated Regal in 1985 and concluded that the partnership did not engage in any business. The grand jury found that the promoters embezzled or misappropriated most of the money the limited partners invested. In 1985 the promoters were indicted on charges of conspiracy, mail fraud, wire fraud, interstate transportation of stolen property, and securities fraud. The promoters pled guilty. Regal did not file a partnership return for 1983. On October 16, 1986, respondent prepared a substitute return for Regal's 1983 taxable year pursuant to section 6020(b).

### 3. The First Notice of Deficiency

Petitioners filed their 1983 Federal income tax return on April 16, 1984. They claimed a $13,361 medical expense deduction and a $120,000 partnership loss.

Respondent issued two notices of deficiency to petitioners for 1983. Respondent mailed a notice of deficiency on June 2, 1987, for 1983 (first notice of deficiency) in which respondent disallowed the $120,000 partnership loss and other deductions. Respondent did not issue the first deficiency notice within the time allowed for assessment of tax by section 6501.

Petitioner timely filed a petition in the Tax Court on September 3, 1987. That case was docket No. 29725-87. In that case, the parties stipulated that petitioner was not liable for a deficiency in income tax for 1983. The Court entered a decision based on that stipulation on October 28, 1988.

### 4. The TEFRA Proceeding

After Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648, respondent conducted an audit of Regal under the TEFRA unified partnership audit provisions (TEFRA partnership provisions). Secs. 6221-6233. Respondent disallowed Regal's deduction for research and development for 1983, which respondent calculated to be $10 million. On June 20, 1988, respondent issued a notice of final partnership administrative adjustment (FPAA) to Dr. Bailey, the partnership's tax matters partner (TMP). Respondent sent copies of the FPAA to the notice partners on June 20, 1988. The parties stipulated that petitioner was a notice partner because he owned 1.2 percent of the partnership. Secs. 6223, 6231(a)(8).

However, petitioner did not receive a copy of the FPAA and did not find out about the TEFRA partnership proceeding until February 6, 1991.

Regal's TMP did not file a petition with the Tax Court. However, Green Valley Land & Cattle Co., Inc. (Green Valley), a notice partner, did. That case was docket No. 30329-88. The Tax Court entered a decision under Rule 248(b) on July 23, 1990, in which Green Valley conceded the $10 million research and development expense deduction.

## 5. *The Second Notice of Deficiency*

Respondent first mailed petitioners a copy of the FPAA and notice of commencement of the TEFRA partnership proceeding on February 6, 1991. At that time, respondent invited petitioners to elect to have the Court's decision apply to them. Sec. 6223(e)(2). Petitioners did not respond to the offer.

Respondent issued a second notice of deficiency to petitioners (second notice of deficiency) on June 7, 1991, in which respondent disallowed petitioners' claimed $120,000 partnership deduction and $6,089 of petitioners' claimed $13,361 medical deduction.

OPINION

## 1. *Introduction*

The primary issue for decision is whether the second notice of deficiency for 1983, resulting from the TEFRA partnership audit of Regal, is valid. Petitioners contend it is invalid because, in a prior notice of deficiency for 1983, respondent untimely determined that petitioners were not entitled to certain deductions relating to Regal. Petitioners believe it is grossly unfair to subject them to a second notice of deficiency for 1983.

The analysis of this issue requires consideration of the TEFRA partnership provisions, sections 6221 to 6233. The TEFRA partnership provisions were enacted in 1982 in response to the mushrooming administrative problems experienced by the Internal Revenue Service in auditing returns of partnerships, particularly tax shelter partnerships with numerous partners. Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 268 (J.

Comm. Print 1982). Under these procedures, the tax treatment of partnership items is determined at the partnership level in a unified partnership proceeding rather than in separate proceedings for each partner. *Id.* As we stated in an earlier case interpreting the TEFRA partnership procedures:

> By enacting the partnership audit and litigation procedures, Congress provided a method for uniformly adjusting items of partnership income, loss, deduction, or credit that affect each partner. Congress decided that no longer would a partner's tax liability be determined uniquely but "the tax treatment of any partnership item [would] be determined at the partnership level." Sec. 6221. [*Maxwell v. Commissioner*, 87 T.C. 783, 787 (1986); alteration in original.]

## 2. *Whether Assessment of Tax Relating to Petitioners' Regal Partnership Deduction Is Barred by the Statute of Limitations*

Petitioners contend that section 6501(a) bars assessment of tax relating to their Regal deduction for 1983. We disagree with petitioners because assessment of tax relating to their Regal partnership deductions is governed by the TEFRA partnership provisions, not by the general deficiency procedures under which petitioners' first notice of deficiency for 1983 was issued. Petitioners' $120,000 Regal deduction was not properly included in the first notice of deficiency. Sec. 6225(a); *Maxwell v. Commissioner, supra.* As we said in *Maxwell v. Commissioner, supra* at 787-788:

> In drawing the line between those matters which may be the subject of a partnership proceeding and those which may not be, the statute divides disputes arising from "partnership items" from disputes arising from "nonpartnership items." * * * If the tax treatment of a "partnership item" is at issue, the statute requires the matter to be resolved at the partnership level. Sec. 6221. * * *
>
> \* \* \* \* \* \* \*
>
> It is evident both from the statutory pattern and from the Conference report that Congress intended administrative and judicial resolution of disputes involving partnership items to be separate from and independent of disputes involving nonpartnership items. Consequently, the portion of any deficiency attributable to a "partnership item" cannot be considered in the partner's personal case involving other matters that may affect his income tax liability. The "partnership items" must be separated from the partner's personal case and considered solely in the partnership proceeding. See sec. 6226(a); sec. 6226(f).

Income tax must generally be assessed within the later of 3 years after the return is filed or the due date of the return. Sec. 6501(a) and (b). However, section 6501(a) does not apply to income tax attributable to partnership items. Sec. 6501(o); *Cambridge Research & Dev. Group v. Commissioner*, 97 T.C. 287, 292 (1991). Regal's losses are partnership items.

Income tax attributable to partnership items must generally be assessed within 3 years after the later of the date the partnership files its information return or the due date of the partnership return. Sec. 6229(a); *Cambridge Research & Dev. Group v. Commissioner, supra.* Regal did not file a 1983 return. Respondent may assess tax attributable to a partnership or affected item at any time if the partnership has not filed a return. Sec. 6229(c)(3). A substitute return is not a partnership return for statute of limitations purposes. Sec. 6229(c)(4). Therefore, the FPAA issued to Dr. Bailey on June 20, 1988, was timely.

Treatment of TEFRA partnership items is determined at the partnership level rather than in separate proceedings involving individual partners. Secs. 6221, 6222, and 6223; *Sente Inv. Club Partnership v. Commissioner*, 95 T.C. 243, 247-248 (1990); *Maxwell v. Commissioner*, 87 T.C. at 787. Regal was a TEFRA partnership for 1983. A partner owning more than a 1-percent interest in a partnership generally is a "notice partner". Sec. 6223(b). Respondent must mail to notice partners, at their correct address, notice of when the administrative proceeding under section 6223(a) begins and ends. Sec. 6223(a), (d); *Wind Energy Technology Associates III v. Commissioner*, 94 T.C. 787, 788 (1990).

Petitioner was a notice partner because he owned a 1.2-percent interest in Regal. Petitioner did not receive timely notice as required under section 6223(a), and respondent has not asserted proper mailing of the notice. Regal's partnership action in the Tax Court had become final when petitioner received notice. In that situation, a taxpayer may elect to be treated consistently with the decision or may elect out of the partnership proceeding. Sec. 6223(e)(2)(B); *Aufleger v. Commissioner*, 99 T.C. 109, 114 (1992). Petitioner did not elect to be subject to the partnership proceeding. Therefore, petitioners' deduction of the $120,000 Regal loss was converted to a nonpartnership item on February 6, 1991, the day respondent mailed notice of the proceeding to petitioner.

Secs. 6223(e)(2)(B), 6231(b)(1)(D); *Wind Energy Technology Associates III v. Commissioner, supra* at 793; sec. 301.6223(e)-2T(a)(2), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6785 (Mar. 5, 1987).

Respondent generally must assess any tax attributable to converted nonpartnership items within 1 year from the date the items become nonpartnership items. Sec. 6229(f). Under section 6229(f), respondent had until February 6, 1992, to issue the notice of deficiency with respect to the Regal deduction.[1] Respondent mailed the second notice of deficiency to petitioners on June 7, 1991. Thus, we conclude that the second notice of deficiency was timely and assessment with respect to the claimed $120,000 Regal loss is not barred by the statute of limitations. Sec. 6229(f).

### 3. *Second Notice of Deficiency Not Invalid Under the Doctrine of Res Judicata*

Petitioners argue that the doctrine of res judicata bars respondent's assessment of their 1983 partnership items because our decision in docket No. 29725-87 was also for 1983. Respondent stipulated in that decision that petitioner was not liable for a deficiency in income tax or additions to tax for 1983 because the period of limitations on assessment and collection had expired.

The doctrine of res judicata bars litigating a claim if it was or could have been litigated in a prior case. *Commissioner v. Sunnen,* 333 U.S. 591, 597-598 (1948); *Trost v. Commissioner,* 95 T.C. 560, 566 (1990). As discussed above, petitioners' $120,000 partnership loss deduction was not properly included in the first notice of deficiency. *Maxwell v. Commissioner,* 87 T.C. at 788. The first notice of deficiency was invalid, *id.,* and the decision entered was a nullity,[2] *Billingsley v. Commissioner,* 868 F.2d 1081, 1084-1085 (9th

---

[1] Sec. 6229(d) provides that when respondent mails an FPAA, the mailing suspends the running of the 3-year limitations period for the period during which an action may be brought under sec. 6226 and for 1 year thereafter. *Aufleger v. Commissioner,* 99 T.C. 109, 112 (1992).

[2] If the decision were valid for other nonpartnership or partnership items, sec. 6231(e)(1)(B)(i) would apply. Sec. 6231(e)(1) provides in part:

(1) DETERMINATIONS AT PARTNER LEVEL.—No judicial determination with respect to the income tax liability of any partner not conducted under this subchapter shall be a bar to any adjustment in such partner's income tax liability resulting from—

    (A) a proceeding with respect to partnership items under this subchapter, or

    (B) a proceeding with respect to items which become nonpartnership items—

        (i) by reason of 1 or more of the events described in subsection (b), and

Cir. 1989), revg. an order of this Court. Thus, litigation of the claimed $120,000 partnership loss is not barred by res judicata.

4. *Second Notice for 1983 Not Invalid Under Section 6212(c)*

Petitioners argue that section 6212(c) precludes respondent from issuing a second notice of deficiency to petitioner for 1983. Section 6212(c) provides in pertinent part:

> SEC. 6212(c). FURTHER DEFICIENCY LETTERS RESTRICTED.—
> (1) GENERAL RULE.—If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), the Secretary shall have no right to determine any additional deficiency in income tax for the same taxable year * * * with respect to any act (or failure to act) to which such petition relates, except in the case of fraud, and except as provided * * * in section 6213(b)(1) (relating to mathematical or clerical errors) * * *

We disagree with petitioners' contention. Section 6230(a)(2)(C) specifically allows a second notice of deficiency, notwithstanding section 6212(c). Section 6230(a)(2)(C) provides:

> (C) Notwithstanding any other law or rule of law, any notice or proceeding under subchapter B with respect to a deficiency described in this paragraph shall not preclude or be precluded by any other notice, proceeding, or determination with respect to a partner's tax liability for a taxable year.

We conclude that assessment of items for a year which have become nonpartnership items is not barred by the prior issuance of a notice of deficiency to a partner for that year. Thus, we conclude that the second notice for 1983 as to petitioner is not invalid under section 6212(c).

5. *Respondent's Assessment of Petitioners' Medical Deduction for 1983*

Petitioners contend that assessment of their medical expense deduction is barred by the statute of limitations because the deduction is not a partnership item.

In the second notice of deficiency, respondent disallowed $6,089 of petitioners' $13,361 medical expense deduction for 1983. By reason of the relationship between adjusted gross income and the percentage limitation (floor) on the medical expense deduction, the disallowed medical expense is affected

by petitioners' partnership item. Thus, it is an affected item under section 6231(a)(5). Affected items are assessed in a computational adjustment after the partnership proceeding. Secs. 6230(a)(1) and 6231(a)(6). A taxpayer's medical expense deduction requires a computational adjustment. Sec. 6230(a)(1); *N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744 (1987).

Computational adjustments of affected items must generally be assessed within 1 year after the items become nonpartnership items. Sec. 6229(a), (f). Thus, respondent had until February 6, 1992, to send the notice of deficiency. Respondent timely mailed the notice of deficiency to petitioners on June 7, 1991. Therefore, respondent's assessment of the adjustment for the medical expense deduction is not barred by the statute of limitations.

## 6. *Partnership Loss With Respect to Regal in 1983*

Respondent determined that petitioners may not deduct their $120,000 partnership loss for 1983. Petitioners bear the burden of proving that the determination is incorrect. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

Petitioners did not offer any evidence about the amounts that Regal spent in 1983. The parties stipulated that Regal did not engage in any business. Petitioners have not proven respondent's determination to be incorrect. Thus, we sustain respondent's determination that petitioners are not entitled to a $120,000 ordinary loss deduction with respect to Regal.

## 7. *Increased Interest Under Section 6621(c)*

Respondent determined that petitioners are liable for increased interest under section 6621(c) for substantial underpayment of income tax due to tax-motivated transactions.

Section 6621(c) provides for an increase in the interest rate where there is a "substantial underpayment" (an underpayment of at least $1,000) in any taxable year "attributable to 1 or more tax-motivated transactions". Petitioners bear the burden of proving they are not liable for this increased interest. Rule 142(a); *Ewing v. Commissioner*, 91 T.C. 396, 422 (1988), affd. without published opinion 940

F.2d 1534 (9th Cir. 1991); *Zirker v. Commissioner*, 87 T.C. 970, 981 (1986).

The only evidence on this issue is the offering memorandum for Regal which promised a 5-to-1 writeoff the first year. We conclude that petitioners' claimed share of the partnership losses was tax motivated because of the promised tax benefits. *Skeen v. Commissioner*, 864 F.2d 93, 96 (9th Cir. 1989), affg. *Patin v. Commissioner*, 88 T.C. 1086 (1987). We sustain respondent's determination that petitioners are liable for increased interest under section 6621(c).

### 8. *Petitioners' Constitutional Arguments*

Petitioners vigorously allege violations of various constitutional rights including double jeopardy, denial of a speedy trial, cruel and unusual punishment, and ex post facto laws. While we do not question the sincerity with which petitioners assert these views, there is no merit to their constitutional arguments. Respondent is simply applying the TEFRA partnership audit procedures enacted by Congress in 1982 in response to the administrative problems caused by the enormous growth of large tax shelter partnerships.

To reflect the foregoing,

*Decision will be entered for respondent.*